**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JEREMY PINSON,** | ) | |
| **#16267-064,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-01130-JPG** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS** | ) | |
| **and FNU WERLICH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Jeremy Pinson is a male-to-female transgender inmate[1] who is currently in the custody of the Federal Bureau of Prisons (BOP).  When she filed this action on October 13, 2016, Plaintiff was incarcerated at the Federal Correctional Institution located in Greenville, Illinois (FCI-Greenville) (Doc. 1).  She sought injunctive relief against the BOP pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), and the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346, 2671-80.

According to the original complaint, Plaintiff sustained a head injury in July and a serious injury to her scrotum in October, after being attacked by fellow inmates at the Federal Correctional Institution located in Terre Haute, Indiana (FCI-Terre Haute) (Doc. 1, pp. 1-5). She was treated at a hospital on or after October 2, 2016, and then transferred to FCI-Greenville. There, Plaintiff was housed in FCI-Greenville's Special Housing Unit (SHU) for her protection.

Plaintiff claimed that she is mentally unfit for solitary confinement.  She requested an order prohibiting her placement in FCI-Greenville's SHU (*id.* at 3).  She also requested an order

---

[1] Plaintiff identifies as female, so the Court will use feminine pronouns when referring to Plaintiff in this Order.

for a referral to a neurologist for further evaluation of her head injury and urologist for treatment of her infected scrotum (*id*. at 2).

Given the seemingly urgent nature of her requests for relief, the Court immediately reviewed the case, in order to determine whether Plaintiff was entitled to relief under Federal Rule of Civil Procedure 65.  *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012).  This was despite the fact that Plaintiff failed to prepay a filing fee or file a motion seeking leave to proceed *in forma pauperis* ("IFP motion").  After carefully considering the matter, the Court concluded that no relief was warranted under Rule 65, primarily because Plaintiff demonstrated no likelihood of success on the merits of her claims.  Therefore, the Court entered an Order denying relief under Rule 65 on October 21, 2016 (*see* Doc. 7).  The Court deferred its formal review of the complaint under 28 U.S.C. § 1915A until Plaintiff prepaid her $400.00 filing fee or filed a properly completed IFP motion.

On October 21, 2016, Plaintiff filed a timely IFP motion (Doc. 9), in which she seeks leave to proceed in this action without prepayment of the Court's usual $400.00[2] filing fee. *See* 28 U.S.C. § 1914(a).  A week later, she filed an amended complaint (Doc. 10).  The IFP motion and amended complaint are now before the Court for consideration.

## IFP Motion

Pursuant to 28 U.S.C. § 1915, a federal court may permit a prisoner who is indigent to bring a "suit, action or proceeding, civil or criminal," without prepayment of fees upon presentation of an affidavit stating the prisoner's assets together with "the nature of the action . . . and affiant's belief that the person is entitled to redress."  28 U.S.C. § 1915(a)(1).

---

[2] Effective May 1, 2013, the filing fee for a civil case was increased to $400.00, by the addition of a new $50.00 administrative fee for filing a civil action, suit, or proceeding in a district court.  See Judicial Conference Schedule of Fees - District Court Miscellaneous Fee Schedule, 28 U.S.C. § 1914, No. 14. A litigant who is granted IFP status, however, is exempt from paying the new $50.00 fee and must pay a total fee of $350.00.

In civil actions, a prisoner's affidavit of indigence must be accompanied by "a certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the 6-month period immediately preceding the filing of the complaint . . . , obtained from the appropriate official of each prison at which the prisoner is or was confined."   28 U.S.C. § 1915(a)(2). Plaintiff's IFP motion and affidavit satisfy these requirements.

According to 28 U.S.C. § 1915, a prisoner may not bring a civil action or appeal a civil judgment "if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the ground that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."   28 U.S.C. § 1915(g). Section 1915(g) requires that this Court consider prisoner actions that were dismissed prior to, as well as after, the PLRA's enactment.  *See Evans v. I.D.O.C.*, 150 F.3d 810, 811 (7th Cir. 1998); *Abdul-Wadood v. Nathan*, 91 F.3d 1023 (7th Cir. 1996).  Plaintiff is subject to the "three strikes rule" set forth under 28 U.S.C. § 1915(g).

Prior to filing this action, Plaintiff "struck out" by filing three or more prisoner actions that were dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon which relief may be granted (*see* Doc. 8, p. 1).  Because Plaintiff has accumulated at least three "strikes" for purposes of Section 1915(g), she may not proceed IFP in this or any other pending case in federal court unless she is in imminent danger of serious physical injury.

The United States Court of Appeals for the Seventh Circuit has explained that "imminent danger" requires a "real and proximate" threat or prison condition.  *See Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003).  Allegations of past harm are not sufficient to state imminent danger; "the harm must be imminent or occurring at the time the complaint is filed."   *Id.*

A plaintiff has not sufficiently alleged imminent danger where she states a past injury that has not recurred.  *Id.*  "By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."  *Abdul-Akbar*, 239 F.3d at 315.  Additionally, courts "deny leave to proceed IFP when a prisoner's claims of imminent danger are conclusory or ridiculous."  *Ciarpaglini*, 352 F.3d at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)).

The Court looks to the allegations set forth in the original complaint when determining whether Plaintiff faced imminent danger of serious physical injury.  *See Ciarpaglini*, 352 F.3d at 330.  The allegations suggest that Plaintiff may have faced imminent danger at the time of filing the action.  She described mental unfitness that placed her at high risk for suicide while she was housed in FCI-Greenville's SHU.  She described an untreated infection to her scrotum.  Finally, she described the lingering effects of an untreated head injury.  For purposes of § 1915 only, the Court finds that Plaintiff's allegations in the original complaint satisfy the "imminent danger" requirement necessary to qualify her for IFP status in this action.  Plaintiff's IFP motion is hereby **GRANTED**.

## Merits Review Pursuant to 28 U.S.C. § 1915A

After filing her original complaint (Doc. 1), Plaintiff filed an amended complaint (Doc. 10) which supersedes and replaces the original and renders it void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004).  The amended complaint is now subject to preliminary review under 28 U.S.C. § 1915A.  Section 1915A requires the Court to dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from an immune defendant.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S.

319, 325 (1989).  An action fails to state a claim upon which relief can be granted if it does not

plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line

between possibility and plausibility."  *Id*. at 557.  The amended complaint does not survive

preliminary review and shall be dismissed.

### First Amended Complaint

In the amended complaint, Plaintiff alleges that multiple BOP psychologists and

psychiatrists have deemed her mentally unfit for solitary confinement during the past two years

(Doc. 10, p. 5).  Even so, she was placed in the SHU for protection, following her transfer to

FCI-Greenville sometime after October 2, 2016.  She had no contact with other individuals,

except when she was escorted to trial each day by a lieutenant and "no less than" five staff

members.  She had no access to a television or radio.  Further, she was deprived of all access to

mental and emotional stimuli.  Plaintiff alleges that these conditions have repeatedly resulted in a

"significant deterioration of her mental health" in the past (*id*.).

Plaintiff further alleges that the BOP and Warden Werlich prevented her from obtaining

necessary medical care for injuries that she sustained before her transfer to FCI-Greenville.

Plaintiff sustained a head injury, after being attacked by fellow inmates at another facility.

She claims that a CT scan of her brain and a referral to a neurologist were ordered.  However,

she received neither prior to filing this action on October 13, 2016.  As a result she suffered from

headaches and an unsteady gait, in addition to blindness in one eye that followed her attack (*id*.).

Plaintiff also complains that she sustained an injury to her scrotum at another institution.

She was treated at a hospital in early October.  However, the wound did not heal properly and

became infected.  She describes the wound as "foul smelling and leaking fluid" (*id*.).  She alleges

that the defendants interfered with her access to medical care.

Plaintiff repeatedly complained to Warden Werlich.  However, the warden took no action to move her out of the SHU.  The warden also failed to schedule her for an appointment with a neurologist or urologist.

In the amended complaint, Plaintiff again requests an order enjoining the defendants from housing her in FCI-Greenville's SHU and further delaying her access to a CT scan (*id*. at 6). In addition, she seeks an order compelling the defendants to send her to a neurologist and urologist for further evaluation and treatment.  Finally, she asks this Court to require the defendants to implement all of the recommendations contained in a 265-page CNA Report that she filed along with the amended complaint (Doc. 10-1 to 10-6).

## Discussion

Plaintiff brings this action in order to obtain injunctive relief.  She did not request monetary damages in her original complaint, and she does not seek monetary relief in her amended complaint.  Further, her requests for relief specifically pertain to the conditions of her confinement at FCI-Greenville.

Given her departure from FCI-Greenville just days after her arrival, Plaintiff's request for this relief appears to be moot.  By letter dated October 30, 2016, Plaintiff notified the Court that she transferred to the United States Medical Center for Federal Prisoners located in Springfield, Missouri ("USFP-Springfield") (*see* Doc. 12).  The Seventh Circuit has long held that "when a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004).  *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995).  Only if Plaintiff can show a realistic possibility that she would again be

incarcerated at FCI-Greenville under the conditions described in the amended complaint would it be proper for the Court to consider her claims and request for injunctive relief. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)). Plaintiff has presented the Court with absolutely no information suggesting that she will return to FCI-Greenville. Given the fact that she was housed there for less than two weeks before filing this action and less than a month total, the Court cannot conclude that a return is possible in the future. She has alleged nothing to this effect, and absent any indication that she will transfer back to FCI-Greenville, her need for injunctive relief is now moot.

This Court has considered whether Plaintiff would be entitled to other forms of relief, despite her failure to request it, and concludes that she would not. *See Jones v. Butler*, -- Fed. Appx. --, 2016 WL 4994649 (7th Cir. Sept. 19, 2016). The BOP is not amenable to a suit for money damages pursuant to *Bivens*. Although *Bivens* authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers, it does not permit suit against the federal agency itself. *See FDIC v. Meyer*, 510 U.S. 471, 475; 483-86 (1994) (sovereign immunity shields the federal government from suit absent a waiver; *Bivens* action permits suit only against an individual who is an agent of the federal government). *See also Correctional Services Corp. v. Malesko,* 534 U.S. 61, 69– 70 (2001); *King v. Fed. Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005).

The amended complaint also supports no claim for relief against Warden Werlich for a constitutional violation under the doctrine set forth in *Bivens*. Plaintiff's claims arise under the Eighth Amendment, which is applicable to prisoners and prohibits cruel and unusual punishment. The Eighth Amendment protects Plaintiff from a defendant's deliberate indifference to her health and safety. *Belbachir v. County of McHenry*, 726 F.3d 975, 979 (7th Cir. 2013) (citations

omitted).  Deliberate indifference is shown when a prison official "knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006).

The amended complaint includes no allegations suggesting that Warden Werlich exhibited deliberate indifference toward Plaintiff's health or safety.  To the contrary, Plaintiff was placed in FCI-Greenville's SHU *for her protection*, after being attacked by other inmates and after prison guards allegedly plotted her murder.  Although Plaintiff intimated that isolated housing could cause a significant deterioration to her mental health, she includes no allegations suggesting that it actually did or that she put the warden on notice of any symptoms she suffered.  Finally, she points to a lack of human interaction as the triggering factor for her anticipated mental health deterioration, while also indicating that she had "daily" contact with a lieutenant and "no less than" five staff members while being escorted to trial.  Presumably, the trial (even by videoconference) resulted in additional human contact.  Further, she admits that she "repeatedly" spoke with the warden during the relevant time period.  These allegations simply offer no support for an Eighth Amendment claim against the Warden Werlich under *Bivens*.

With respect to her request for a CT scan and a referral to a neurologist and urologist for further treatment, the Court cannot find any support for Plaintiff's assertion that Warden Werlich "interfered" with Plaintiff's access to medical care or that this interference amounted to deliberate indifference.  Given that Plaintiff was incarcerated at FCI-Greenville for a matter of days immediately after being treated at a hospital and just before being transferred to a medical center, it would appear that she did, in fact, receive treatment.  Even if she did not, the Court cannot find any suggestion in the amended complaint that Warden Werlich's failure to secure both a referral and completed appointments with two specialists during the brief period of time

that Plaintiff was housed at FCI-Greenville amounted to deliberate indifference.  The amended complaint supports no request for relief against the warden.

In light of the foregoing considerations, the amended complaint and this action shall be dismissed without prejudice.  This includes dismissal of all claims against both defendants.

### Disposition

**IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed IFP (Doc. 9) is **GRANTED**.  Once she submits a certified copy of her trust fund statement in accordance with Document 11, a payment order will be entered.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Doc. 8) is **DENIED** as **MOOT**.  Recruitment of an attorney would not change the outcome of this matter, given that Plaintiff's request for injunctive relief and her claims are now moot and she has neither requested nor is entitled to any other relief.

**IT IS FURTHER ORDERED** that the amended complaint (Doc. 10) is **DISMISSED** without prejudice because Plaintiff's request for injunctive relief is moot and she has stated no other claims upon which relief may be granted.   Defendants **FEDERAL BUREAU OF PRISONS** and **FNU WERLICH** are **DISMISSED** without prejudice from the action.  Plaintiff is **ADVISED** that this dismissal shall <u>not</u> count as a "strike" under the provisions of 28 U.S.C. § 1915(g).

Plaintiff incurred the obligation to pay the filing fee for this lawsuit when it was filed, thus her obligation to pay the $350.00 filing fee survives her claims.  *See* 28 U.S.C. § 1915(b)(1), (e)(2); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, her notice of appeal must be filed with this Court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(1)(A).  A motion for

leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C).  If Plaintiff does choose to appeal, she will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal.  *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999).  Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur a "strike."  A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.  FED. R. APP. P. 4(a)(4).  A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.  However, a Rule 60(b) motion for relief from a final judgment, order, or proceeding does not toll the deadline for an appeal.

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: November 14, 2016**

s/J. Phil Gilbert
United States District Judge